

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 25, 2020

**BY EMAIL**

The Honorable Debra Freeman
United States Magistrate Judge
Southern District of New York
Daniel Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Corey Smith,* **20 Mag. 8458**

Dear Judge Freeman:

    The Government respectfully submits this letter in response to the defendant's request to modify their bail conditions to permit them to travel to Washington, D.C. for three days. For the reasons set forth below, the Government concurs with Pretrial Services that the defendant's request should be denied and that the bail conditions already set by Judge Wang should remain in place.

    In the early morning hours of July 15, 2020, the defendant set fire to an NYPD Homeless Outreach Unit van (the "NYPD Van"), which was parked in Greenwich Village. As detailed in the Complaint, which is attached hereto as Exhibit A, as the defendant walked by the NYPD Van, the defendant used a bottle filled with ignitable liquid to set fire to the NYPD Van. After seeing that the NYPD Van was not fully engulfed in flames, the defendant circled back to the NYPD Van with more accelerant, and set it ablaze once more, thereby assuring the complete destruction of the NYPD Van.

    On August 13, 2020, the defendant was arrested, along with a co-defendant, and presented before the Honorable Ona T. Wang. While the Government did not oppose bail conditions for the defendant, the Government argued that strict bail conditions – to wit, home confinement – were necessary to assure the safety of the community given the extremely dangerous conduct underlying the charges against the defendant. As alleged in the Complaint, the defendant used ignitable liquid to set the NYPD Van on fire in a densely populated neighborhood; returned to the NYPD Van when they saw that the NYPD Van hadn't fully ignited; and used more accelerant to ensure that the NYPD Van was completely destroyed. As the Government noted during the bail argument, this conduct is incredibly dangerous. Indeed, first responders and innocent bystanders easily could have been injured or killed in the blaze that resulted from the defendant's conduct. It is only by sheer luck that the NYPD Van's gas tank did not ignite causing an even more dangerous fire or explosion

The extreme danger caused by the defendant's conduct was the basis for the Government's argument for home confinement. The defendant grossly mischaracterizes the record by suggesting that the Government sought to detain the defendant to "ensure that Mx. Smith did not participate in ongoing protests for Black Lives Matter, Defund the Police, and other similar movements." (Def. Aug. 24, 2020 letter at 2.) The Government did no such thing. In fact, the Government's only interest is in ensuring the safety of the community and in protecting innocent bystanders from the defendant's dangerous actions. The defendant's motives for intentionally causing a blaze in the middle of a public street are of no moment; it is the complete disregard for the safety of others that makes strict bail conditions necessary. In recognition of the need to protect the community from the defendant's dangerous actions, Judge Wang ultimately found that the least restrictive possible bail conditions included limiting the defendant's travel to the Southern and Eastern Districts of New York, as well as a curfew in which the defendant is "restricted to [their] residence every day from 11 p.m. until 6 a.m." Nothing has changed that would affect that analysis.

The defendant appears to suggest that not permitting the defendant to travel to Washington, D.C. amounts to a violation of their First Amendment rights. Such a suggestion is legally unsupported and wholly preposterous. First, the defendant's pretrial conditions were imposed after Judge Wang carefully considered the conditions or set of conditions that would assure the safety of the community, as required by the Bail Reform Act. Indeed, conditions were imposed because the defendant intentionally ignited a vehicle in the middle of a public street – not to restrict their First Amendment rights. *See, e.g., United States v. Collins*, 2012 WL 3537814 (N.D. Cal. Mar. 16, 2012) (finding content neutral pretrial restriction limiting defendants' use of internet relay chat (IRC) valid given that the defendants allegedly used IRC in furtherance of criminal activity). This is no different – indeed it is less restrictive – than the conditions routinely imposed on defendants who have engaged in violent criminal conduct that endangers the community. Taking the defendant's argument to its logical conclusion would invalidate effectively *all* pretrial conditions for *all* defendants, and the defendant has not cited any law in support of that proposition.

Second, to the extent the defendant's pretrial conditions affect their First Amendment rights at all, courts have routinely recognized the propriety of restricting a defendant's access to forums for certain activity protected by the First Amendment when the restrictions are based upon specific findings by the court. *See United States v. Murtari*, 2008 WL 687434, at *4 (N.D.N.Y. Mar. 11, 2008). In this case, Judge Wang found that the defendant's dangerous conduct took place in the middle of the night; accordingly, a curfew was appropriate. Nor, as the defendant claims, do the conditions "preclude Mx. Smith from participating in peaceful protests." (Def. Aug. 24, 2020 letter at 2). The conditions carefully crafted by Judge Wang allow the defendant to leave their home to peaceably assemble in the Southern and Eastern Districts of New York during the hours of 6 a.m. until 11 p.m. Similarly, the defendant is not restricted in any way from exercising their First Amendment rights by expressing their views by written or spoken word. In total, the pretrial conditions imposed by Judge Wang are narrowly tailored to achieve the objections of the Bail Reform Act in the least possibly restrictive manner.

For the reasons stated above, the Government respectfully submits that the pretrial conditions imposed by Judge Wang continue to be appropriate, and that, consistent with the

recommendation of Pretrial Services, the defendant's request to travel to Washington, D.C. should be denied.

        Very truly yours,

        AUDREY STRAUSS
        Acting United States Attorney

by: _____
        Christy Slavik
        Assistant United States Attorney
        (212) 637-1113

# EXHIBIT A

```
Approved:  M. S[signature]
           ─────────────────────────────────
           CHRISTY SLAVIK
           Assistant United States Attorney

Before:    THE HONORABLE SARAH NETBURN
           United States Magistrate Judge
           Southern District of New York            20 MAG 8458
```

- - - - - - - - - - - - - - - - - - - x
                                       :    **COMPLAINT**
UNITED STATES OF AMERICA               :
                                       :    Violations of
        - v. -                         :    18 U.S.C. §§ 844
                                       :    and 2
COREY SMITH,                           :
ELAINE CARBERRY,                       :    COUNTY OF OFFENSE:
                                       :    NEW YORK
                    Defendants.        :

- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   WEN JIANG YAN, being duly sworn, deposes and says that he is a Special Agent in the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the New York City Arson and Explosion Task Force, and charges as follows:

**COUNT ONE**
(Conspiracy to Commit Arson)

   1.   On or about July 15, 2020, in the Southern District of New York and elsewhere, COREY SMITH and ELAINE CARBERRY, the defendants, and others known and unknown, combined, conspired, confederated, and agreed, together and with each other, to commit arson, in violation of Title 18, United States Code, Section 844(f).

   2.   It was a part and object of the conspiracy that COREY SMITH and ELAINE CARBERRY, the defendants, and others known and unknown, would and did maliciously damage and destroy, and attempt to damage and destroy, by means of fire and an explosive, a vehicle, in whole and in part owned and possessed by an institution and organization receiving Federal financial assistance, in violation of Title 18, United States Code, Section 844(f).

(Title 18, United States Code, Sections 844(n) and 2.)

## COUNT TWO
(Arson)

3. On or about July 15, 2020, in the Southern District of New York and elsewhere, COREY SMITH and ELAINE CARBERRY, the defendants, maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire and an explosive, a vehicle, in whole and in part owned and possessed by an institution and organization receiving Federal financial assistance, to wit, SMITH and CARBERRY used ignitable liquid to set fire to a marked NYPD vehicle in New York, New York.

(Title 18, United States Code, Sections 844(f) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent and Certified Explosives Specialist with the ATF assigned to the New York City Arson and Explosion Task Force. I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement officials, and my examination of documents and other records, including law enforcement reports and video surveillance. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported in this Complaint, they are reported in substance and in part, except where otherwise indicated.

5. Based on my review of video recordings, I have learned that movements and actions of individuals later identified as COREY SMITH and ELAINE CARBERRY, the defendants, on or about July 15, 2020, were captured by a video camera at and around 12th Street and University Place, New York, New York ("the premises") and other cameras in the vicinity of the premises. After reviewing those video recordings, I have learned, in substance and in part:

a. At approximately 4:35 a.m., a group of individuals including SMITH and CARBERRY walked south on University Place from 13th Street towards 12th Street. SMITH held a glass bottle, which appeared to be a Patron tequila bottle, as he walked.

b.  At approximately 4:37 a.m., surveillance footage shows movement on the northwest corner of 12th Street and University Place near a marked New York City Police Department ("NYPD") Homeless Outreach Unit van (the "NYPD Van"). Around that time, flames appeared to ignite at or around the NYPD Van.

c.  Seconds after the flames ignited, CARBERRY walked west on 12th Street, away from the NYPD Van. SMITH followed CARBERRY. At approximately 4:38 a.m., SMITH handed CARBERRY an object that appeared to be a bottle, which CARBERRY put into her purse.

d.  At approximately 4:39 a.m., SMITH and CARBERRY rounded the corner of 12th Street and 5th Avenue, on to 5th Avenue. Seconds after SMITH and CARBERRY rounded the corner, SMITH and CARBERRY went back towards 12th Street.

e.  At approximately 4:39 a.m., CARBERRY gave SMITH a bottle from her purse. SMITH proceeded east on 12th Street, toward the NYPD Van. CARBERRY followed at a distance.

f.  At approximately 4:41 a.m., surveillance footage shows movement on the northwest corner of 12th Street and University Place near the NYPD Van. A larger fire appeared to ignite at or around the NYPD Van.

g.  At approximately 4:42 a.m., CARBERRY walked away from the NYPD Van, west on 12th Street towards 5th Avenue. SMITH ran away from the NYPD Van, following CARBERRY west on 12th Street.

h.  At approximately 4:42 a.m., SMITH again handed CARBERRY an object that appeared to be a bottle, which CARBERRY put in her purse.

6.  Based on my conversations with other law enforcement officers and my review of video surveillance and of documents and reports prepared by the Fire Department of the City of New York ("FDNY") and the NYPD, I have learned, in substance and in part, that:

a.  On or about July 15, 2020, members of the NYPD observed the NYPD Van on fire. The NYPD attempted to put out the fire and called FDNY.

3

b. When the FDNY arrived at the scene, the FDNY observed the NYPD Van, which was still on fire. The FDNY ultimately extinguished the fire.

c. The NYPD Crime Scene Unit recovered a Patron tequila bottle from inside the NYPD Van.

d. An analysis of the materials found in the NYPD Van confirmed the presence of an accelerant.

e. The FDNY confirmed that the fire was deliberately set as an act of arson.

7. Based on my conversations with other law enforcement officers, and my review of law enforcement records and public records, I have learned the following:

a. Still shots of the surveillance footage described in Paragraph 5 above were distributed among law enforcement. A law enforcement officer working undercover ("Officer-1") identified COREY SMITH and ELAINE CARBERRY, the defendants, as the individuals in the surveillance footage based on Officer-1's previous interactions with SMITH and CARBERRY.

b. Following Officer-1's identification of SMITH and CARBERRY, law enforcement compared the surveillance footage from the night of July 15, 2020, described in Paragraph 5 above, with photographs of SMITH and CARBERRY contained in law enforcement databases, a photograph of CARBERRY from the Department of Motor Vehicles ("DMV"), and photographs of SMITH obtained from social media accounts in SMITH's name. I believe that the appearances of SMITH and CARBERRY in these photographs match the appearance of the individuals captured in the surveillance footage described above.

8. Based on my conversations with other law enforcement officers, I know that the NYPD shared excerpts of the surveillance footage with local television news. After seeing the surveillance footage on the local news, an anonymous individual ("Anonymous Source-1") called the NYPD Crimestoppers hotline, an anonymous tip hotline run by the NYPD, and informed the NYPD that Anonymous Source-1 recognized the female in the surveillance footage as a resident of a particular Brooklyn address (the "Brooklyn Address"). According to DMV records, CARBERRY lives at the Brooklyn Address.

9. Based on my training and experience, I have learned that the NYPD is an organization that receives financial assistance from the federal government.

WHEREFORE, deponent respectfully requests that warrants issue for the arrests of COREY SMITH and ELAINE CARBERRY, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
Special Agent Wen Jiang Yan
Bureau of Alcohol, Tobacco, Firearms, & Explosives

Sworn to before me this
11th day of August, 2020

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York